```
             IN THE UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KELLIE M. VARGO,               )
                               )
            Plaintiff,         )
                               )
       v.                      )     Civil Action No. 05-542
                               )
RAS INDUSTRIES,                )     Judge Cercone
STEVEN FISCHER,                )     Magistrate Judge Hay
BRENDA MATTY,                  )
                               )
            Defendants.        )
```

## REPORT AND RECOMMENDATION

### I.   RECOMMENDATION

It is respectfully recommended that the motion to dismiss submitted on behalf of defendants RAS Industries, Steven Fischer and Brenda Matty (Docket No. 16) be denied.

### II.  REPORT

Plaintiff Kellie M. Vargo commenced this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), 42 U.S.C. § 1981, and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §§ 951, et seq., alleging that she was subjected to continuous and ongoing hostile work environment while she was working as a temporary staff member at RAS Industries ("RAS") and that, when she complained, she was

retaliated against and subjected to further humiliation and harassment which ultimately forced her to resign.

Specifically, plaintiff has alleged in the complaint that beginning on or about July 18, 2004, and continuing until September 15, 2004, plaintiff was subjected to a sexual harassment hostile work environment by a male employee named Sam Scagline who at various times rubbed his pelvis against plaintiff's behind, glared at her, touched her, made offensive comments about her body parts, made unwelcome sexual advances, asked her for rides, followed and stalked her at work and on breaks, whistled at her and repeatedly called out her name.[1] Plaintiff alleges that she reported the sexual harassment to her floor supervisors who, in turn reported the complaint to Brenda Matty ("Matty"), the Human Resources Supervisor, and Steven Fischer (Fischer"), the Plant Manager.[2]  Plaintiff subsequently met with Matty and Fischer and, at their request, provided them with a written statement.[3]  According to plaintiff, she was told to go home, being assured that she would be paid for the time off which apparently included Saturday, July 31, 2004, and advised

---

[1]Complaint ¶ 14a (Docket No. 1).

[2]Complaint ¶ 14b.

[3]Complaint ¶ 14c.

2

her not to call the police or consult an attorney.[4]  It also appears that Sam Scagline was suspended.[5]

Plaintiff alleges that when she returned to work the following week she was retaliated against by being called into a meeting with Matty and Fischer and two Union representatives and that, despite her requests to bring "a witness," she had to attend the meeting alone.[6]  Plaintiff claims that she was subjected to further harassment at the meeting including being told by one of the Union representatives, without admonishment, that Sam probably thought she was good looking and she was being harassed because she was a "nice fresh piece of meat."[7] Plaintiff was then apparently told to go back to work, do her job and "not put the nail in Sam's coffin."[8]

Thereafter, plaintiff alleges that she continued to be retaliated against as she was shunned and talked about; she was humiliated when Sam Scagline returned to work after his suspension when he smirked and laughed at her because he had

---

[4]Complaint ¶ 14d.

[5]Complaint ¶ 14g.

[6]Complaint ¶ 14e.

[7]<u>Id.</u>

[8]Complaint ¶ 14f.

gotten away with sexual harassment; she had to watch Matty shake Sam's hand upon his return; and defendants refused to pay her for Saturday, July 31, 2004, or for her medical and therapy bills as they had promised.[9]  As a result of the unbearable work environment, plaintiff contends that on September 15, 2004, she was forced to resign or was constructively discharged.[10]

Plaintiff further alleges that defendants Fisher and Matty perpetuated the sexual harassment hostile work environment, did nothing to stop it even after plaintiff lodged complaints, and retaliated against her for doing so.[11]

Plaintiff filed the instant complaint on April 26, 2005, bringing claims for employment discrimination pursuant to Title VII and section 1981 against RAS and Aerotek (Count I), employment discrimination pursuant to the PHRA against all defendants (Count II), and claims for aiding and abetting employment discrimination pursuant to the PHRA against Fischer, Matty and Hepka (Counts III, IV and V, respectively).  The case was subsequently dismissed against Aerotek and Hepka by

---

[9]Complaint ¶¶ 14g, 14j.

[10]Complaint ¶ 14i.

[11]Complaint ¶¶ 29, 32.

stipulation entered on July 26, 2005.[12]  The remaining
defendants, RAS, Fischer and Matty, have now filed a motion to
dismiss arguing that plaintiff has failed to state a claim under
Fed. R. Civ. P. 12(b)(6).

In reviewing a motion to dismiss under Rule 12(b)(6),
all well pleaded allegations of the complaint must be accepted as
true and viewed in a light most favorable to the non-movant.
Brader v. Allegheny General Hospital, 64 F.3d 869, 873 (3d Cir.
1995); Scrob v. Patterson, 948 F.2d 1402, 1405 (3d Cir. 1991).
The Court is not, however, required to accept as true unsupported
conclusions and unwarranted inferences.  Schuylkill Energy
Resources v. PP&L, 113 F.3d 405, 417 (3d Cir. 1997).  Thus, "if
it appears beyond doubt that the plaintiff can prove no set of
facts in support of his claim which would entitle him to relief,"
the motion to dismiss is properly granted.  Haines v. Kerner, 404
U.S. 519, 520-21 (1972), quoting Conley v. Gibson, 355 U.S. 41,
45-46 (1957).  The issue is not whether the plaintiff will
prevail in the end but only whether he should be entitled to
offer evidence in support of his claim.  Scheuer v. Rhodes, 416
U.S. 232, 236 (1974).

---

[12]See Docket Nos. 19, 22.

Defendants initially argue that plaintiff has failed to state a claim of retaliation because she did not suffer an adverse employment action.

In order to establish a prima facie case of retaliation a plaintiff must show that 1) the plaintiff engaged in protective activity; 2) the employer took an adverse employment action against her; and 3) there was a causal connection between plaintiff's participation in the protected activity and the employer's adverse action.  Kachmar v. SunGard Data Systems, Inc., 109 F.3d 173, 177 (3d Cir. 1997).  An adverse employment action is one that effects the employee's compensation, terms, conditions, or privileges of employment.  Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300-01 (3d Cir. 1997).  Thus, in cases not involving actual discharge or refusal to hire, courts may find unlawful retaliatory conduct "only if it alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee."  Id.[13]

---

[13]The analysis is the same under Title VII, Section 1981 and the PHRA.  Sherrod v. Philadelphia Gas Works, 57 Fed. Appx. 68, 75 (3d Cir. 2003), citing Harley v. McCoach, 928 F. Supp. 533, 538 (E.D. Pa. 1996).  Thus, while the court expressly addresses only Title VII, it implicitly addresses the claims under Section 1981 and the PHRA as well.

Here, as already discussed, plaintiff has alleged in the complaint that after she reported the alleged harassment defendants retaliated against her by calling her into a meeting with Union representatives without allowing a witness to accompany her, by permitting a Union representative to refer to her as "a nice fresh piece of meat," by shunning and talking about her, by shaking Sam's hand in front of her, by refusing to pay her medical bills or for Saturday, July 31, 2004, and by constructively discharging her.

It appears clear that being called into a meeting (even one that plaintiff did not want to attend), being shunned and talked about, shaking Mr. Scagline's hand in front of her and even being referred to in a derogatory manner on one occasion did not effect plaintiff's compensation or the terms and conditions of her employment and, thus, do not constitute adverse employment actions.  See Miller v. Aluminum Company of America, 679 F. Supp. 495, 505 (W.D. Pa.), affirmed, 856 F.2d 184 (3d Cir. 1988)(Rejecting plaintiff's claim that snubbing constitutes unlawful retaliation.); Horvath v. Rimtec Corp., 2000 WL 1030357 *6-7 (D.N.J. July 19, 2000)("[P]laintiff's assertions that he suffered an adverse employment action because he was shunned by defendant ... [does] not rise to the level of an adverse

employment action."). Nor does it appear that defendants' alleged failure to pay plaintiff for a day she did not work or pay for medical bills that they were not otherwise obligated to pay, even if they promised to do so, constitutes an adverse employment action. Although at first blush both suggest that "compensation" has been implicated, the rate at which plaintiff was compensated for the job she was performing was not altered nor were the terms, conditions, or privileges of her employment.

Plaintiff, however, has also alleged that she was constructively discharged in retaliation for complaining about Mr. Scagline's harassment. It is well settled that where a plaintiff has alleged that she was constructively discharged, her "resignation is treated as if it were an outright dismissal by the employer, rendering the resignation an 'adverse employment action' which can serve as the basis for a retaliation claim." Riding v. Kaufmann's Dept. Store, 220 F. Supp. 2d 442, 463 (W.D. Pa. 2002), citing Duffy v. Paper Magic Group, Inc., 265 F.3d 163, 167-68 (3d Cir. 2001). It therefore appears that plaintiff has alleged that she suffered an adverse employment action and, thus, has stated a claim for retaliation.

Defendants nevertheless argue that plaintiff's claim of constructive discharge is an "utter fabrication" and that

plaintiff should be precluded from proceeding with her claim of retaliation in light of the fact that, at the time she made her second complaint about Mr. Scagline's alleged harassment, she was not only represented by counsel but was well aware that Mr. Scagline had been suspended without pay for five days and that defendants had commenced an investigation.  Moreover, defendants contend that to the extent there was any delay in RAS's efforts to investigate the matter it was due to plaintiff's failure to supply them with the information necessary to conduct an investigation.  Because plaintiff resigned on the same day she provided defendants with that information, defendants argue she should be precluded from arguing that defendants' investigation was unsatisfactory or that she was somehow forced to resign as a result.[14]

---

[14]To support its position, defendants have submitted a series of correspondence between counsel for plaintiff and their own lawyers. See Defendants' Brief in Support of Motion to Dismiss, Exhibits B through K (Docket No. 17).  Although generally in resolving a motion to dismiss a court may consider only the allegations set forth in the complaint, any exhibits submitted with the complaint and matters of public record, an exception is recognized where plaintiff's claims are based on the document and its authenticity is not in dispute.  Pension Benefit Guaranty Corp. v. White Consolidated Industries, Inc., 998 F.2d 1192, 1196 (3d Cir. 1993), cert. denied, 510 U.S. 1042 (1994). While it appears that the subject matter contained in the correspondence submitted by defendants is very much embodied in the complaint and that plaintiff has not disputed their authenticity we need not decide the issue here since it appears that defendants' arguments in this regard are not properly before the Court.

In so arguing, defendants cite to <u>Faragher v. City of
Boca Raton</u>, 524 U.S. 775, 778-79 (1999)("<u>Faragher</u>"), in which the
Court held that:

> An employer is subject to vicarious liability
> to a victimized employee for an actionable
> hostile environment created by a supervisor
> with immediate (or successively higher)
> authority over the employee.  When no
> tangible employment action is taken, a
> defending employer may raise an affirmative
> defense to liability or damages, subject to
> proof by a preponderance of the evidence, *see*
> Fed. Rule Civ. Proc. 8(c).  The defense
> comprises two necessary elements: (a) that
> the employer exercised reasonable care to
> prevent and correct promptly any sexually
> harassing behavior, and (b) that the
> plaintiff employee unreasonably failed to
> take advantage of any preventive or
> corrective opportunities provided by the
> employer or to avoid harm otherwise.

<u>Id.</u> at 807.

It therefore appears that, rather than demonstrate why
plaintiff has failed to state a claim in the first instance,
defendants have in essence presented the Court with an
affirmative defense, namely, that they took prompt action to
correct any harassing behavior and that by failing to let
defendants complete their investigation plaintiff failed to take
advantage of their corrective opportunities.

Notwithstanding that under <u>Faragher</u>, an employer is
precluded from presenting an affirmative defense where a

10

supervisor's harassment culminates in a tangible employment action such as discharge, id. at 808, the existence of an affirmative defense will generally not compel dismissal of a complaint pursuant to a 12(b)(6) motion unless the affirmative defense appears unanswered on the face of the complaint.  In re Tower Air, Inc., 416 F.3d 229, 238 (3d Cir. 2005).

It cannot be said in the instant case, however, that defendants' affirmative defense is apparent or unanswered on the face of the complaint.  To the contrary, plaintiff has alleged in the complaint that defendants engaged in unlawful employment practices from July 18, 2004, until she resigned on September 15, 2004; that she was subjected to continuous sexual harassment; that she reported the harassment; that she was thereafter retaliated against; and that the individual defendants did nothing to stop the alleged harassment.  Although plaintiff has acknowledged in her complaint that Mr. Scagline was suspended following plaintiff's initial complaint,[15] it can also be inferred that the alleged harassment continued after his return and even after she lodged her second complaint.  While it is not entirely clear what occurred during this time frame or precisely what plaintiff contends contributed to her constructive

---

[15]See Complaint ¶ 14g.

discharge, it does not appear that defendants' affirmative defense is unanswered on the face of the complaint or properly raised at this juncture.  Id.  See In re Tower Air, Inc., 416 F.3d at 237 (Finding that the federal rules do not require a claimant to set forth in detail the facts upon which his claim is based.); Weston v. Pennsylvania, 251 F.3d 420, 428 (3d Cir. 2001)("Generally, in federal civil cases, a claimant does not have to set out the detailed facts upon which a claim is based, but must merely provide a statement sufficient to put the opposing party on notice of the claim.")  Thus, although it very well may be that defendants will ultimately succeed in their efforts to defend against plaintiff's claims, it cannot be said at this juncture that plaintiff can prove no set of facts in support of her claims for retaliation and constructive discharge and defendants' motion in this regard is properly denied.

      Defendants also argue that plaintiff has failed to state a claim of sexual harassment hostile work environment as numerous courts have found conduct far more egregious than that alleged by plaintiff insufficient to create a hostile work environment.

      It appears undisputed that in order to prove a claim for sexual harassment hostile work environment plaintiff must

demonstrate that: (1) she suffered intentional discrimination because of her sex; (2) the discrimination was pervasive and regular; (3) she was detrimentally affected; (4) the discrimination would have detrimentally affected a reasonable person in the same position; and (5) that respondeat superior liability exists.  Sherrod v. Philadelphia Gas Works, 57 Fed. Appx. 68, 75 (3d Cir. 2003), citing West v. Philadelphia Elec. Co., 45 F.3d 744, 753 (3d Cir. 1995).  Whether an environment is hostile depends upon "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Systems, Inc., 510 U.S. 17, 22 (1993).

     In the instant case, plaintiff has alleged that between July 18, 2004, and September 15, 2004, she was subjected to a continuous and ongoing hostile work environment because of her sex, including, but not necessarily limited to, Mr. Scagline rubbing his pelvis against plaintiff's behind, glaring at her, touching her, making offensive comments about her body parts, making unwelcome sexual advances, asking her for rides, following and stalking her at work and on breaks, whistling at her and

repeatedly calling out her name.  Plaintiff has also alleged that she was frightened, embarrassed and intimidated.

In the Court's view, these assertions are sufficient to state a claim for sexual harassment hostile work environment. Although plaintiff's allegations as set forth in the complaint may not be as egregious as those in the cases cited by defendants, it bears repeating that plaintiff is not obligated to plead every fact upon which her claim is based in the complaint. See In re Tower Air, Inc., 416 F.3d at 237; Weston v. Pennsylvania, 251 F.3d at 428-430 (Finding that although the plaintiff's hostile work environment claim was "not strong" and the merits were "questionable" he nevertheless satisfied the lenient requirement of notice pleading.)  Indeed, each of the cases relied upon by defendants were decided at the summary judgment stage of the proceedings or on appeal after trial.  See Kunin v. Sears Roebuck and Co., 175 F.3d 289 (3d Cir.), cert. denied, 528 U.S. 964 (1999); Koelsch v. Beltone Electronics Corp., 46 F.3d 705 (7th Cir. 1995); Saxton v. American Tel. & Tel. Co., 10 F.3d 526 (7th Cir. 1993); Weiss v. Coca-Cola Bottling Co., 990 F.2d 333 (7th Cir. 1993); Cooper-Nicholas v.

14

<u>City of Chester</u>, 1997 WL 799443 (E.D. Pa. Dec. 30, 1997).[16]
Thus, it appears that defendants' motion in this regard is
properly denied.

Finally, defendants have argued that plaintiff's claims
brought under the PHRA against Matty and Fisher should be
dismissed because the complaint contains no specific allegations
that they engaged in any particular conduct relating to
discrimination or harassment.

Under the PHRA,

It shall be an unlawful discriminatory
practice,

*        *        *

(e) For any person, employer, employment
agency, labor organization or employe, to
aid, abet, incite, compel or coerce the doing
of any act declared by this section to be an
unlawful discriminatory practice, or to
obstruct or prevent any person from complying
with the provisions of this act or any order
issued thereunder, or to attempt, directly or

---

[16]In this manner, even if properly considered by the Court,
plaintiff's July 30, 2004 handwritten statement and the two letters
authored by plaintiff's counsel in which plaintiff's grievances have
been outlined, and which defendants have submitted to support their
position, do not appear to provide the basis for dismissing
plaintiff's claims.  Although the facts stated therein may not be
sufficient standing alone to support plaintiff's hostile work
environment claim, they do not necessarily constitute the whole of
evidence that plaintiff may ultimately submit in support of her claim.
<u>See</u> <u>In re Tower Air, Inc.</u>, 416 F.3d at 237; <u>Weston V. Pennsylvania</u>,
251 F.3d at 428-30.  As such, it cannot be said that  plaintiff has
failed to state a claim for hostile work environment in the first
instance.

> indirectly, to commit any act declared by
> this section to be an unlawful discriminatory
> practice.

43 P.S. § 955(e).  Thus, "[a]n individual supervisory employee

can be held liable under an aiding and abetting/accomplice

liability theory ... for [her] own direct act of discrimination

or for [her] failure to take action to prevent further

discrimination by an employee under supervision."  Holocheck v.

Luzerne County Head Start, Inc., 385 F. Supp. 2d 491, 497

(M.D. Pa. 2005), quoting Davis v. Levy, Angstreich, Finney,

Baldante, Rubenstein & Coren P.C., 20 F. Supp. 2d 885, 887 (E.D.

Pa. 1998).

        In the case presently before the Court, plaintiff has

alleged that Fischer was RAS's Plant Manager and her supervisor;

that Matty was the Supervisor of Human Resources and her

supervisor; that after the harassment was reported to Fischer and

Matty they retaliated against her by requiring her to attend a

meeting with Union representatives without a witness and that she

was subjected to further harassment and humiliation during the

meeting by one of the Union members without admonishment from

Fischer or Matty; that they aided and abetted the discrimination

by perpetuating a hostile work environment and by doing nothing

to stop the unlawful discrimination and harassment; and further

16

intimidated and retaliated against her for reporting the sexually
hostile work environment.

Although these allegations do not provide the details
that defendants would like, they nevertheless appear sufficient
to satisfy the liberal pleading standards under the Federal Rules
of Civil Procedure and, thus, state a claim for aiding and
abetting liability under the PHRA.  See Pryor v. Nat'l Collegiate
Athletic Ass'n., 288 F.3d 548, 564 (3d Cir. 2002), citing
Swierkiewicz v. Sorema N.A., 534 U.S. 506, 513-15 (2002)("[A]
complaint requires only a 'short and plain' statement to show a
right to relief, not a detailed recitation of the proof that will
in the end establish such a right.")  See also Holocheck v.
Luzerne County Head Start, Inc., 385 F. Supp. 2d at 497 (Finding
allegations that defendants were supervisors and that they aided
and abetted the discrimination satisfactory); Davis v. Levy,
Angstreich, Finney, Baldante, Rubenstein & Coren P.C., 20 F.
Supp. 2d at 887-88 (same); Sherif v. AstraZeneca, L.P., 2001 WL
359958, *3 (E.D. Pa. April 3, 2001) (Finding that allegations
that two supervisors "actively participated" in the plaintiff's
termination and a third supervisor "was made aware and did not
prevent [the plaintiff's] discriminatory demotion and

termination" was sufficient to state an individual liability claim under the PHRA.)

Further, while we again acknowledge defendants' assertions that they were at all times engaged in the process of determining the merits of plaintiff's claims and an appropriate remedy, plaintiff has challenged the validity of those efforts. Moreover, the time line of events and the precise nature of defendants' efforts is not entirely clear at this juncture. As such, it appears that plaintiff should be given the opportunity to develop those facts.

For these reasons, it is recommended that the motion to dismiss submitted on behalf of defendants RAS Industries, Steven Fischer and Brenda Matty (Docket No. 16) be denied.

Within ten (10) days of being served with a copy, any party may serve and file written objections to this Report and recommendation.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond

thereto.   Failure to file timely objections may constitute a waiver of any appellate rights.

                                    Respectfully submitted,

                                    /s/ Amy Reynolds Hay
                                    AMY REYNOLDS HAY
                                    United States Magistrate Judge


Dated:   7 February, 2006.

cc:  Hon. David S. Cercone
     United States District Judge

     Lois Glanby, Esquire
     152 East Highland Drive
     McMurray, PA 15317

     David M. Huntley
     Jones, Gregg, Creehan & Gerace
     411 Seventh Avenue
     Suite 1200
     Pittsburgh, PA 15219-1905